McHANEY, County Judge, v. PEOPLE'S
STATE BANK OF LONGVIEW
et al. (No. 1846.)

(Court of Civil Appeals of Texas. Texarkana.
June 15, 1917. Rehearing Denied
July 28, 1917.)

1. CONTRACTS ⟨⟩169 — CONSTRUCTION — CIR-
CUMSTANCES OF EXECUTION.

To arrive at the intention of the parties a
contract may be read in the light of the circum-
stances under which it is entered into, and indef-
inite terms thus explained or restricted.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. § 752.]

2. DEPOSITARIES ⟨⟩13 — CONSTRUCTION OF
BOND—EXTENT OF LIABILITY.

In view of circumstances under which a
bond was given to indemnify a county for bank
deposits, held, that the bond covered only de-
posits of "good roads" money.

[Ed. Note.—For other cases, see Depositaries,
Cent. Dig. § 27.]

3. INDEMNITY ⟨⟩4 — VALIDITY OF BOND —
LIMITATION OF LIABILITY.

A bonding company had a right to limit its
liability under a common-law bond covering
county deposits, to a fractional part of the to-
tal loss due to the default of the bank holding
such funds.

[Ed. Note.—For other cases, see Indemnity,
Cent. Dig. §§ 2–6.]

Appeal from District Court, Gregg Coun-
ty; John M. Tipps, Judge.

Action by J. H. McHaney, County Judge,
against the People's State Bank of Longview
and others. Plaintiff appeals from a judg-
ment in his favor for $8,204.67. Affirmed.

On June 18, 1916, the People's State Bank
of Longview, Tex., a banking corporation,
with the Lion Bonding & Surety Company, a
corporation, as surety, executed a bond in
the sum of $25,000, payable to the county
judge of Gregg county and his successors in
office, the conditions being as follows:

"The condition of the foregoing obligation is
to the effect that, whereas, the aforesaid bank
has been designated as a depository for cer-
tain funds and moneys belonging to the obligee:

"Now, therefore, the condition of this obliga-
tion is to the effect that if the said bank shall
during the term commencing at 9 o'clock a. m.
on the 18th day of June, 1916, promptly pay
over on proper legal order such sums as shall
have been deposited with it under the bond as
the designated depository aforesaid, together
with the amount of interest which it has con-
tracted to any thereon, then this obligation shall
be void, otherwise to be and remain in full force
and virtue: Provided, however, and this bond
is issued by the surety on the following express
conditions, to wit:

"(1) That if at any time during the currency
of this bond the obligee shall hold any other
security on account of its funds deposited with
said bank, such security shall not be released
without notice to and the consent of the surety
hereon, and if the said obligee shall, without the
knowledge or consent of the said surety, release
any such security, then this bond shall there-
upon become absolutely null and void.

"(2) That if at any time during the currency
of this bond the amount on deposit with the said
bank to the credit of the obligee shall exceed the
amount of this bond and the obligee fail to re-
quire the giving of additional security, the lia-
bility of the surety thereon in the event of loss
shall be limited to such proportion of the total
loss as the penalty of this bond bears to the total
sum then on deposit.

"(3) That the surety hereon shall be liable
hereunder for only such proportion of the total
loss sustained as the penalty of this bond shall
bear to the total penalties of all bonds and secu-
rities furnished to the obligee, and in no event
shall the surety hereon be liable hereunder in
any sum in excess of the penalty of this bond.".

The county judge brought this suit against
the principal and the surety on the bond to
recover the amount of the penalty of the
bond. The petition, after describing the
bond, alleges:

"Plaintiff would further show that the said
People's State Bank had been designated under
the terms of the law as a depository for certain
funds and moneys belonging to the county of
Gregg, state of Texas, and that there had been
deposited in said People's State Bank the sum
of $25,000 which was to the credit of said Gregg
county as money received for the sale of bonds
to build good roads in Gregg county, Tex., and
that there was in the hands of said bank said
sum of money so deposited, and that the above-
described bond was given by the said People's
State Bank to secure to said Gregg county the
above $25,000, which was known and designated
as the special road and bridge fund, and which
said money had been deposited on or about the
16th day of June, 1916. And plaintiff would
further show that on the 16th day of August,
1916, there was a legal demand made by the
proper county authorities upon said bank for
said sum of money, to wit, $25,000, and that the
bank failed and refused to turn over said mon-
ey or any part thereof, and still fails and refus-
es to turn over said money, and that your plain-
tiff has been advised and charges the fact to
be true that said People's State Bank on or
about said date closed its doors, suspended busi-
ness, and that said bank, with all of its posses-
sions, property and belongings, was taken over
and is now held by the banking commissioner of
Texas under the laws of the state of Texas.
Said People's State Bank being a banking corpo-
ration, created and existing under the laws of
the state of Texas, and that said bank, so your
petitioner is advised, is now and was on the date
last mentioned insolvent and unable to meet its
demands in the due course of business, and that
by reason thereof said obligation now sued upon
becomes due and suit is now brought upon said
bond to recover said $25,000, and at the time of
said failure of the bank and the demand made
said bond was in full force and effect."

The surety company answered by denial,
and specially pleaded as follows:

"Defendant Lion Bonding & Surety Company
denies that its liability if any, hereunder is in
the amount of the penalty of the bond declared
upon, but says that the bond declared upon con-
tains the following provision: 'That the surety
hereon shall be liable hereunder for any such
proportion of the total loss sustained as the pen-
alties of all bonds and securities furnished to the
obligee, and in no event shall the surety hereon
be liable hereunder in any sum in excess of the
penalty of this bond.'

"This defendant would further show to the
court that before and at the time of the default
complained of there was another and addition-
al bond and security furnished to the obligee,
which was and is in force and effect, said bond
being signed by the People's State Bank, the
same principal, and by divers individual sureties,
said bond being in the penal sum of $50,000,
same being set out verbatim in this defendant's
foregoing special exception No. 2, to which ref-

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

erence is hereby made. This defendant says that under the terms of the foregoing provision and under the terms of the additional bond this defendant's liability, if any, is limited to only such proportion of the total loss sustained under this bond as the penalties of this bond bear to the total penalties of both bonds, which is as $25,000 is to $75,000, and that, accordingly, this defendant's liability, if any, under said bond is not in excess of $8,333.33."

The plaintiff by supplemental petition pleaded, as material now to state:

"That so much of the answer of the defendant which seeks to set up and allege that they are cosureties with other bondsmen who had given additional bonds this plaintiff would specially deny that there were any other bonds covering this special fund, but that the bond upon which suit is declared in this case was given by the defendant for a special purpose and on a special fund, which was not covered by any other bond and was and is a common-law obligation and not given by the said bank under the depository law of the state of Texas. Plaintiff would further allege and show that on the 10th day of February, 1915, the People's State Bank did make application to the commissioners' court of Gregg county to become the depository of the common funds of Gregg county, including the school money, and that the commissioners' court did declare and award the said bank a contract for the deposit of the common funds and school money, and on said date, which was the time fixed by law for the deposit of county funds in banks, did deposit said funds with said bank, and to protect said common fund the said bank did execute a bond on last aforesaid date for the sum of $50,000, which was signed by various and sundry citizens of Longview, Gregg county, Tex., and which was approved by the said commissioners' court, and that in pursuance of said bond the common fund and school funds were deposited in said bank."

It appears that the People's State Bank of Longview was designated by the commissioners' court of Gregg county as the depository of the funds belonging to such county for a term of two years from February 9, 1915. On February 10, 1915, the bank executed a bond as such depository in the sum of $50,-000, with certain individuals signing the same as sureties. The condition of that bond is:

"That the People's State Bank of Longview, Tex., shall faithfully perform all of the duties and obligations devolving by law upon said depository, and shall pay upon presentation all checks drawn upon said depository by the county treasurer of the county, and shall faithfully keep and account for according to law all the fund of said county."

At the time of the designation of the bank as depository, and at the time of the execution of the bond mentioned, the county funds consisted of the common funds and school funds of the county. In March, 1915, there was an election held in Gregg county for good roads bonds, and by that election the people voted upon themselves a bond issue of $300,000 to build good roads. The bonds were issued about the 1st of June, 1915, and the purchase money of the sale of the bonds came into the county treasury of Gregg county. The People's State Bank presented to the court a written application as follows:

"That this bank be relieved from services as county depository under its present contract with the county of Gregg for such portion of the particular funds arising from the sale of the $300,000 issue of good roads bonds recently voted by the county as shall exceed the amount of $69,935.20, the bank agreeing to give bond for the amount, desiring to serve as depository for such amount under its present contract with the said county as its depository."

On June 16, 1915, the commissioners' court entered an order respecting the said application of the bank as follows:

"It is therefore ordered, adjudged and decreed by the court that said application be and is hereby granted, and the said depository, the People's State Bank of Longview, is relieved of said deposit from the sale of said bonds to the extent of said $225,000, and the bank will receive the sum of $69,935.20 of the money arising from the sale of said bonds, and is hereby ordered to give a new and additional bond in terms of the law in the amount of said additional deposit of $69,935.20 in some responsible guarantee insurance company, and further that said application of said bank to be relieved of said deposit be recorded in the minutes of this court."

In pursuance of this order the People's State Bank, with the Lion Bonding & Surety Company as surety, executed a bond in the sum of $35,000, and also executed another bond in the same amount with another and different company as surety thereon. These bonds were approved and filed. Some time subsequent to the issuance and approval of these two bonds the $69,935.20 of the good roads fund was reduced by expenditure to $24,614.93; and on June 18, 1916, the said bank executed the bond which is here sued upon, and the same was approved on July 11, 1916, and the two other bonds mentioned were canceled by the commissioners' court. The proof showed that the bank when it failed owed the county $67,348.47, composed of the following items: $30,450.88 of general funds; $24,614.93 of good roads fund; $12,-282.66 of various school funds.

The commissioner of insurance and banking approved the total claim of the county as a general creditor's claim against the bank. The proof shows that the said bank is insolvent. The testimony of the local agents of the surety company is to the effect that in the circumstances surrounding the making of the bond sued on it was the understanding that:

"This bond was to cover the good roads bond issue, or rather the money arising from the good roads bond issue; and my understanding was that this bond was the only bond to cover the road fund."

The case was tried before the court without a jury, and a judgment was entered in favor of the plaintiff for $8,204.67. The plaintiff appeals.

J. H. McHaney, E. M. Bramlette, and F. J. McCord, all of Longview, for appellant. Thomas, Milam & Touchstone, of Dallas, for appellees.

LEVY, J. (after stating the facts as above). The trial court construed the bond sued on

as limiting the liability of the surety company to that proportion of the good roads money lost through default, of the bank which the penal sum mentioned in the bond bears to the total amount of all the bonds and securities furnished by the bank as depository. And the appellant insists that the court erred in so construing the bond and in not awarding a recovery against the surety company for the entire amount of good roads money on deposit in the bank. The bond recites that the People's State Bank "has been designated as a depository for certain funds and moneys belonging to the obligee," and is conditioned that the said bank—

"promptly pay, over on proper legal order such sums as shall have been deposited with it under the bond as the designated depository aforesaid, together with the amount of interest which it has contracted to any thereon."

[1] According to the language of the bond the substantial engagement of the surety company is, in the event of the default of the bank, to repay to the county "such sums as shall have been deposited with it [the bank] under the bond as the designated depository aforesaid." The liability is thus limited to such moneys as shall have been deposited with the bank "under the bond as the designated depository aforesaid." By the word "aforesaid" reference is plainly made to the previous recital that the bank has been designated as a depository for "certain funds and moneys belonging to the obligee." These are the determinative words of the contract; and as the words "certain funds and moneys," and "such sums" thereof "as shall have been deposited with it [the bank] under the bond as the designated depository aforesaid" have reference to independent circumstances, it may not be said from the face of the bond itself that the surety company undertook at all events to repay any and all funds of the county that may be lost by the default of the bank. Thus the subject-matter of the contract and the main purpose of and the circumstances that led up, to its execution are material to the ascertainment of the intention of the parties and the meaning of the terms they used and the scope thereof. It is the familiar rule of construction that, in order to arrive at the intention of the parties, the contract itself must be read in the light of the circumstances under which it is entered into. Indefinite terms employed in the contract, as here, may be thus explained or restricted as to their meaning and application, and the contract may be so construed as to give it such effect, and none other, as the parties intended at the time it was made.

[2] Looking to the circumstances giving rise to the execution of the bond in suit it appears that the People's State Bank made application to the commissioners' court to be relieved, for reasons given, of being responsible as a depository of the county for—

"the particular funds arising from the sale of the $300,000 issue of good roads bonds recently voted by the county as shall exceed the amount of $69,935.20, the bank agreeing to give bond for the amount, desiring to serve as depository for such amount under its present contract with the county as its depository."

The commissioners' court granted the application, and by order directed the bank "to give a new bond and an additional bond in terms of the law in the amount of said additional deposit of $69,935.20 in some responsible guarantee insurance company." It was in compliance with this order of the commissioners' court requiring the bank to give a new bond and an additional bond "in the amount of said additional deposit of $69,935.20" that the bank undertook to execute a bond to cover such "additional deposit" with "some responsible guarantee insurance company" as surety. As a fact, it appears, the bank, in immediate compliance with this order, executed two bonds—each in the penal sum of $35,000, and each with a distinct and separate surety company as surety. By proper expenditure on the part of the county the $69,935.20 was subsequently reduced to $24,614.93. And the instant bond in the sum of $25,000 was then given by the bank and accepted by the county, and the two former bonds were canceled. The recital in the bond in suit that the People's State Bank "has been designated as a depository for certain funds and moneys belonging to the obligee" manifestly has reference by intention of the parties to this order of the commissioners' court requiring a new bond and an additional bond. And in the light of the application of the bank and the order of the commissioners' court in respect to it, the intention would clearly appear to have the bond apply to, cover, and secure only the good roads money. For the application of the bank asks to be relieved of, and offers to give bond for, such portion "of the particular funds" arising from the sale of the good roads bonds as shall exceed $69,935.20, and the order of the commissioners' court definitely required such new and additional to be "in the amount of such additional deposit of $69,935.20," meaning good roads money. Consequently it is believed that the words of the bond, "certain funds and moneys," were intended to refer to and describe only the good roads money as a limitation of the source or amount of money on deposit, and that the words "such sums as shall have been deposited with it [the bank] under the bond as the designated depository aforesaid" were intended to mean and have application only to the good roads money. In this construction of the bond, as by intention of the parties that the bonds covers and secures only the good roads money on deposit in the bank under the bond, the question remains only of whether or not the court correctly awarded a recovery against the surety for only $8,204.97 instead of the whole amount of $24,614.93.

[3] The bond contains the following proviso:

"The surety hereon shall be liable hereunder for only such proportion of the total loss sustained as the penalty of this bond shall bear to

the total penalties of all bonds and securities furnished to the obligee, and in no event shall the surety hereon be liable hereunder in any sum in excess of the penalty of this bond."

The evidence is without dispute that the bank as a depository executed a general bond to appellant in the sum of $50,000, in terms of the statute, covering "all the funds of said county," and that this bond is in force and effect. The language of the proviso is plain and unequivocal, and can bear but one construction. It shows a contractual arrangement between the surety and the obligee limiting the liability of the surety, in the event of the default of the principal bank, to such proportion of the total loss sustained by the obligee as the penalty named in the bond bears to the total amount of all bonds furnished by the principal bank to the obligee. And the bond is not by its terms a statutory bond of a county depositor. It is purely a common-law obligation. The bond being a common-law obligation, and not a statutory bond, it may not be said, it is believed, that the surety company did not have the legal right to make a valid and enforceable contractual stipulation, as here, between it and the obligee, limiting its liability, in the event of the default of the bank, to a fractional part of the total loss due to the default of the bank.

It is concluded that the trial court did not err in the judgment rendered, and that said judgment should be affirmed, and it is accordingly so ordered.

